UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THERESE LECCESE,

                      Plaintiff,

-vs-

METROPOLITAN LIFE INSURANCE CO.,

                      Defendant.
_____

DECISION and ORDER

05-CV-6345 CJS

**APPEARANCES**

| | |
|---|---|
| For plaintiff: | Michael A. Rose, Esq.<br>125 State Street<br>Rochester, NY 14614<br>(585) 232-1630 |
| For defendant: | Joseph S. Brown, Esq.<br>Catherine Grantier Cooley, Esq.<br>Hodgson, Russ, Andrews, Woods & Goodyear<br>One M&T Plaza, Suite 2000<br>Buffalo, NY 14203<br>(716) 848-1346 |

**INTRODUCTION**

**Siragusa, J.** This ERISA disability insurance case is before the Court for decisions on both parties' motions for summary judgment. For the reasons stated below, the Court grants defendant's application, and dismisses the case.

**BACKGROUND**

At the outset, the Court applies Local Rule of Civil Procedure 56.1. That rule requires that the moving party include with its motion for summary judgment a "separate, short, and concise statement of the material facts to which the moving party contends there

is no genuine issue to be tried." W.D.N.Y. Loc. R. Civ. P. 56.1(a). Defendant Metropolitan Life Insurance Co. ("MetLife") has complied with this rule. (Def.'s Statement of Facts (# 16).)The rule also imposes a duty on the opposing party, in this case, the plaintiff, Therese Leccese ("Leccese"). In that regard, it states, "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." W.D.N.Y. Loc. R. Civ. P. 56.1(b). Since Leccese has failed to comply with Rule 56.1(b), the third paragraph of the rule comes into play.  It reads: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *unless* controverted by the statement required to be served by the opposing party." W.D.N.Y. Loc. R. Civ. P. 56.1(c) (emphasis added). In view of this provision, the Court deems admitted all of MetLife's statements of material fact contained in its December 18, 2006, Statement of Facts Pursuant to Local Rule 56.1 (# 16). Accordingly, the undisputed facts are as follows..

1. Leccese was an employee of Verizon Wireless and a participant in the Plan. (Compl. ¶¶ 5, 6.)

2. The Plan is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. (Compl. ¶¶ 2.)

3. The Plan is sponsored by Verizon Wireless and Metropolitan Life Insurance Company ("MetLife") is the claims administrator. (Sullivan Aff.,

Oct.24, 2006, attaching the administrative record (hereinafter cited as "L __."), (L. 000006).)

4. Under the terms of the Plan, "Verizon Wireless has delegated to MetLife discretionary authority as to all aspects of claims administration for the STD[1] portion of the Managed Disability Plan. This delegation includes the ability to render initial decisions on claims, render decisions on all appeals of denied claims, and to otherwise interpret the terms of the STD Portion of the Plan. The decision of MetLife is final and binding to the extent permitted by law." (L. 000013.)

5. On July 21, 2004, Leccese had an abdominal dermatolipectomy to remove excess abdominal skin due to weight loss. (L. 000154.)

6. In a letter dated October 8, 2004, MetLife notified Leccese that she was not eligible to receive STD benefits beyond September 14, 2004. (L. 000131-32.)

7. The letter noted that Leccese had been required to provide additional information in support of her claims by September 28, 2004, but that she had failed to do so. (L. 000131-32.)

8. The STD component of the Plan provides, in relevant part, that an employee is "disabled…when the employee is absent from work because of impairment for which there is material medical evidence that…the

---

[1]The letters "STD" are not identified in the original.

employee cannot perform the Essential Functions of his or her job at Verizon Wireless." (L. 000008.)

     9.     The Plan further provides as follows:

> You and your *Physician* may agree that you are unable to work, but MetLife is the Claim Administrator and has discretionary authority to determine whether you are disabled and entitled to STD benefits.…Your STD benefit checks may also be suspended if your *Physician* does not provide MetLife with continued information about your disability.

(L.000030 (emphasis is original).)

     10.     By letter dated October 18, 2004, MetLife informed Leccese she was not eligible for STD beyond September 14, 2004 based upon a review of the office visit notes of Leccese's doctor. (L. 000358.)

     11.     According to the September 14, 2004, office notes of Dr. Ralph P. Pennino, plaintiff's treating physician, Leccese's "flaps were 100% viable and the small opening at the inferior aspect of [her] wound was granulating in a very nice manner." (*Id.*)

     12.     In addition, Dr. Pennino's notes from Leccese's October 1, 2004 office visit indicated her wound was "half of what it was" at her last doctor's visit." (*Id.*)

     13.     In the October 18, 2004 letter, MetLife advised Leccese that "the medical documentation in support of [her] claim [did] not demonstrate how [she was] precluded from performing the essential functions of [her] job as Customer Service Coordinator at Verizon Wireless." (*Id.*)

14. More specifically, MetLife informed Leccese that there was no documentation regarding "[her] symptoms, the frequency or severity of [her] symptoms nor any objective clinical information provided to substantiate a continued disability beyond September 14, 2004." (*Id.*)

15. In the October 18, 2004 letter, MetLife advised Leccese that she was not disabled per the Plan provisions and advised her of her right to appeal the decision. (*Id.*)

16. On October 22, 2004, MetLife informed Leccese that it had received her appeal and that her claim would be submitted for independent review. (L. 000267.)

17. Dr. Pennino's notes from Leccese's November 9, 2004 visit indicated that her wound was "almost completely closed." (L. 000292.)

18. On October 19, 2004, Leccese was advised that her doctor's previous submissions failed to provide the requisite "detailed clinical" information sought by MetLife. (L. 000213.)

19. On November 11, 2004, MetLife again informed Leccese that her STD claim was in appeals review and the medical documentation did not support her claim. (L. 000215.) More specifically, the Diary Review-Report for November 11, 2004 states that Leccese was advised she should "submit medical for STD to be reviewed in appeals and should include info re surgery [employee] is going to have." (*Id.*)

20. MetLife also requested that Leccese provide medical information concerning her upcoming…surgery which had been scheduled for December 1, 2004. (*Id*.)

21. By letter dated December 1, 2004, MetLife upheld its original determination to terminate Leccese's claim for STD benefits. (L. 000262-63.)

22. MetLife advised Leccese that the doctor visit notes indicated that as of September 14, 2004 her incision was "closing nicely," and that by October 1, 2004 her wound was about half of what it was when the doctor first saw her and that it has "healed nicely." (L. 000263.)

23. MetLife also stated that it had her file reviewed by an independent health care professional board certified in internal and pulmonary medicine. (*Id*.)

24. The independent consultant concluded that there was no indication in the office records that Leccese had complications with doing her activities of daily living and there was no notation in her file indicating that she was in any pain. (*Id.*)

25. MetLife further noted that "there was no clinical [information] that supported restrictions or limitations from your sedentary job as of September 14, 2004." (*Id*.)

26. As such, MetLife determined that the decision to withdraw benefits as of September 14, 2004 was appropriate. (*Id.*)

   27. On June 30, 2005, Leccese commenced this action by filing her Complaint. (Brown Decl., Dec. 18, 2006, at ¶ 2, Ex. 1.)

  Plaintiff, in her motion for summary judgment, included an affidavit by counsel reciting facts relevant to support her motion. (Pl.'s Response to Def.'s Mot. for Summary J. (# 25).) Local Rule 56.1(d) requires that,

> Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e). All such citations shall identify with specificity the relevant page, and paragraph or line number of the authority cited.

W.D.N.Y. Loc. R. Civ. P. 56.1(d) (2003). Although Leccese's counsel's affidavit states that "there is no genuine issue as to any material fact," he offers doctor's notes (Exhibit A), which purportedly challenged the Administrative Record submitted by MetLife. MetLife, in compliance with Local Rule 56.1(b), contradicted the factual recitations in Leccese's counsel's affidavit, particularly his submission of "the first three pages of Exhibit A on the grounds that these documents were not part of the Administrative Record before MetLife and to which this Court's review is limited." (Def.'s Response to Pl.'s Aff. ¶ 6.) Those first three pages consist of notes from August 9, 2004 (continued from a prior page, not included in the submission), through February 4, 2005. The Court notes that the pages contain the following information at the bottom of each one: "10-31-'06 13:14 FROM-Plastic Surgery Grp   585-586-XXXX[2]   T-202 P00Z[3]/008 F-485." In its memorandum of law

---

[2] The Court has chosen to omit the last four digits of what appears to be the sending facsimile machine's telephone number.

[3] This information varies on each page. The letter Z is actually a "4" on one page, and a "3" and a "2" on the two following pages. The Court interprets this to mean the first three pages submitted by plaintiff's counsel are the second, third and fourth pages of a facsimile consisting of eight pages total.

opposing plaintiff's motion for summary judgment, defendant asks the Court to strike the first three pages of plaintiff's Exhibit A and not consider them, since they were not part of the administrative record before defendant when it reviewed and denied plaintiff's disability claim.

## STANDARDS OF LAW

*Summary judgment standard*

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3rd Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Off-Shore, Inc.*, 948 F.2d 187 (5th Cir. 1991); Fed. R. Civ. P. 56(f).

Once the moving party has met its burden, mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). The court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### *Standard of Review*

ERISA restricts a court's ability to review the decisions of a plan administrator *if* the plan gives the administrator discretionary authority[4] to construe and interpret the terms of the plan. In such a situation, a court is limited to the "arbitrary and capricious" standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

Pursuant to ERISA, a plan participant may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). The principles of law applicable to such ERISA claims are well settled:

---

[4] The plan summary, included in the administrative record manually filed by the defendant, indicates that the plan grants the plan administrator this discretionary authority. Plaintiff does not dispute that the plan administrator had this discretionary authority. (*See* Rose Aff. ¶¶ 2-3.)

> [A] denial of benefits challenged under § 1132(a)(1)(B) [of ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Thus, where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is "arbitrary and capricious."

*Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (citations omitted). When applying the arbitrary and capricious standard of review, courts

> may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow, thus we are not free to substitute our own judgment for that of the [plan administrator] as if we were considering the issue of eligibility anew.

*Id*. at 442 (citations omitted). In this regard, substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (citation and internal quotation marks omitted). Moreover,"if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality'." *Id*. at 1071; *see also, Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 648 (2d Cir. 2002) ("[A] remand of an ERISA action seeking benefits is inappropriate where the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable.") (citation and internal quotation marks omitted).

With regard to the evaluation of medical evidence by a plan administrator, it is further well settled that

> ERISA…requires that plan procedures "afford a reasonable opportunity…for a full and fair review" of dispositions adverse to the claimant. § 1133(2). Nothing in the Act itself, however, suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.

*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830-31. However, a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Nord*, 538 U.S. at 834.

## ANALYSIS

Initially, the Court must address MetLife's request that the first three pages of Exhibit A to the affidavit of counsel for Leccese be stricken. The Second Circuit has considered whether a district court should consider evidence that was not before the plan administrator and held that "additional evidence may be considered upon *de novo* review of an issue of plan interpretation." *DeFelice v. American Int'l Life Assur. Co.*, 112 F.3d 61, 65 (2d Cir. 1997) (citing *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 103-05 (2d Cir. 1991)). However, since the parties agree that the standard of review in this case is "arbitrary and capricious," the Court is limited to a review of the record as it existed before the plan administrator. *See*, *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966-67 (6th Cir. 1990); *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir. 1989) ("American Home's contention that a court conducting a de novo review must examine only such facts as were available to the plan administrator at the time of the benefits denial is

contrary to the concept of a de novo review.") Therefore, the Court will review only the evidence which was before the plan administrator, and not the new evidence submitted by Leccese's counsel.

As the undisputed facts show, MetLife made its decision based on input from the treating physician, Dr. Pennino. However, that input consisted primarily of conclusory statements from doctor's orders, not specific medical information documenting the rationale for his conclusion that plaintiff was disabled. In response, MetLife requested that Leccese provide evidence of her functional abilities and expected return to work date, as well as office notes, diagnostic test results and operative reports, discharge summaries, rehabilitation and therapy notes, and the names and dosages of all her current medications. (Administrative Record, at L000131-32.) The requested information, though, was not provided.

As MetLife pointed out in its review of Leccese's appeal, MetLife advised Leccese that the doctor visit notes indicated that as of September 14, 2004, her incision was "closing nicely," and that by October 1, 2004 her wound was about half of what it was when the doctor first saw her and that it has "healed nicely." (L. 000263.) MetLife also stated that it had her file reviewed by an independent health care professional board certified in internal and pulmonary medicine. (*Id*.) The independent consultant concluded that there was no indication in Dr. Pennino's  office records that Leccese had complications with respect to her activities of daily living, nor was there any indication that she was in any pain. (*Id*.) MetLife further noted that "there was no clinical [information] that supported restrictions or limitations from your sedentary job as of September 14, 2004." (*Id*.)

MetLife's decision was neither arbitrary, nor capricious. *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (citations omitted). The decision to deny benefits was reasoned and supported by substantial evidence. *See*, *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995). Here, the Court's scope of review is narrow, and the Court is not free to substitute its own judgment for that of the plan administrator, as would be the case where the Court conducts a *de novo* review. *Id*.

In opposition to MetLife's position, Leccese argues that MetLife had a duty to seek expert advice when required. (Rose Aff. ¶ 8.) She relies on *Miller v. United Welfare Fund*, 72 F.3d 1066 (2d Cir. 1995), which stated,

> We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record. Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a "useless formality." *See Wardle v. Central States, Southeast & Southwest Areas Pension Fund*, 627 F.2d 820, 828 (7th Cir. 1980) (citing *Ruth v. Lewis*, 166 F. Supp. 346, 349 (D.D.C. 1958)), *cert. denied*, 449 U.S. 1112 (1981). This rule is consistent with the fact that nothing "in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators" and with the ERISA "goal of prompt resolution of claims by the fiduciary." *Perry* [*v. Simplicity Engineering*], 900 F.2d [963] at 966 [(6th Cir. 1990)].

*Miller*, 72 F.3d at 1071. The panel deciding *Miller* expressed concern that the plan's review of Miller's medical records was performed by a plan employee, "who was neither a nurse nor a physician…" *Id*., at 1072. In contrast to the situation in *Miller*, however, the administrative records shows that MetLife engaged a "Health Care Professional Board

Certified in internal and Pulmonary Medicine" to determine that the records submitted by Leccese's physician did not support a determination that she was disabled, as defined in the plan. Therefore, contrary to the implication in Leccese's counsel's affidavit, MetLife *did* obtain expert evidence to interpret the sparse medical records submitted to them.

As of the date of its final decision denying benefits, MetLife reasonably relied on the medical evidence submitted by Leccese's doctor, which was insufficient to support his conclusion that she was disabled after September 14, 2004.

## CONCLUSION

For the foregoing reasons, plaintiff's cross-motion (# 18) for summary judgment is denied, defendant's motion (# 12) for summary judgment is granted, and the case is dismissed.

IT IS SO ORDERED.

Dated:  April 12, 2007
        Rochester, New York

             ENTER:


                                          /s/ Charles J. Siragusa
                                          CHARLES J. SIRAGUSA
                                          United States District Judge